UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT F.,

           Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00750 EAW

# INTRODUCTION

Represented by counsel, Plaintiff Robert F. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). (*See id.*).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 6; Dkt. 10). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.

## BACKGROUND

On July 4, 2022, Plaintiff filed an application for DIB. (*See* Dkt. 3 at 209-10).[1] Plaintiff alleged that he was disabled because of stage 3 colorectal cancer, with a disability onset date of April 16, 2022. (*See id.* at 299). The Social Security Administration ("SSA") initially denied Plaintiff's application, as well as on appeal, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*See id.* at 97-112, 127-28). Following a hearing on March 7, 2024, ALJ Stephan Cordovani issued an unfavorable decision on April 3, 2024. (*See id.* at 18-84). Plaintiff requested Appeals Council review, which was denied on June 13, 2024. (*See id.* at 5-10). Plaintiff then filed the present action on August 12, 2024. (Dkt. 1).

## LEGAL STANDARDS

I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence." *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is not the Court's

---

[1]   Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified). However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* But if the claimant does have at least one severe impairment, the ALJ continues to step three. *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* § 404.1520(d). If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the most "an

individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a). (*See* Dkt. 3 at 21-35). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 16, 2022. (*See id.* at 24).

At step two, the ALJ found that Plaintiff suffered from one severe impairment: rectosigmoid junction cancer with low back pathology. (*See id.* at 24-26). The ALJ also

found that Plaintiff's mixed hyperlipidemia, hypertension, obesity, and adjustment disorder with depressed mood were non-severe. (*See id.*). Further, the ALJ considered the impact of Plaintiff's adjustment disorder on his mental work-related functioning and found that he was: (1) not impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) not impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting and managing himself. (*See id.* at 25-26).

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the Listings. (*See id.* at 26). In particular, the ALJ considered Listings 1.15 and 13.18. (*See id.*). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> Continuous standing or walking limited to 2-3 hours then a break of up to 15 minutes required; no exposure to extreme heat, cold, and vibration; no climbing ladders, ropes, [and] scaffolds; no balance as that term is defined in the [Selected Characteristics of Occupations]; no operation of foot controls; and no work around hazards such as unprotected heights[] and moving mechanical parts.

(*See id.* at 27 (citation modified)).

At step four, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff, given his age, education, work experience, and RFC, could perform past relevant work as a policy holder information clerk or an operating room technician. (*See id.* at 33-35). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Act between April 16, 2022, and April 3, 2024. (*See id.* at 35).

- 5 -

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ's RFC determination was unsupported by substantial evidence for two reasons. (*See* Dkt. 6-1 at 8-14). First, Plaintiff says that the "ALJ failed to adequately explain [the] specific sit/stand option [in the RFC], which is vaguely stated and conflicts with the VE's 10% off-task time limitation." (*See id.* at 8-11). Second, he says that the "ALJ failed to incorporate Plaintiff's mental limitations into the RFC, without adequate explanation, and in doing so failed to properly consider [the] consistency between the [opinions of psychiatric consultative examiner Susan Santarpia, Ph.D., and primary care provider Vikas Singla, M.D.]." (*See id.* at 11-14). The Court has considered those arguments and, for the reasons discussed below, finds them without merit.

### A. Break from Continuous Standing or Walking

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). A claimant's RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta*, 508 F. App'x at 56, and remand for further administrative proceedings is unnecessary as long as the ALJ's analysis "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," *see Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ limited Plaintiff to continuous standing or walking for 2-3 hours followed by a required break of up to 15 minutes. Contrary to Plaintiff's contentions, the ALJ's explanation for this limitation was supported by substantial evidence.

As an initial matter, to the extent Plaintiff argues that that the ALJ's failure to expressly "state that his included breaks were not in addition to normal breaks . . . left the limitation too vague to be amenable to meaningful review," (Dkt. 6-1 at 8 (citation modified)), the Court disagrees. There was nothing in the ALJ's decision or hypothetical to the VE that suggested that the ALJ intended that Plaintiff required the identified breaks in addition to normally scheduled breaks and Plaintiff provides no support for this reading. In *Chelsea L. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00933-CJS, 2024 WL 4198143, at *15 (W.D.N.Y. Sept. 16, 2024), a similar challenge made by a plaintiff who argued that the ALJ's failure to clarify whether she required unscheduled breaks of 10-15 minutes, in addition to her regular 15-minute breaks, was rejected. As here, the court in *Chelsea L.* found that Plaintiff's contention was not supported by the evidence and further noted that the RFC was reflective of a standard workday for many jobs. *Id.* ("The Court also agrees with Defendant that the arrangement described by the ALJ—two hour blocks of work followed by fifteen minute breaks—is not some highly-specific finding peculiar to Plaintiff, but, rather, is the standard arrangement for unskilled work.").

Likewise, to the extent Plaintiff argues that the RFC suffers from vagueness because "the VE testified that an individual could be off-task up to 10% *per hour*, so if [the 15-minute breaks described in the RFC] were in addition to normal breaks, with the way the RFC's limitation is worded, each 15-minute break would take place within a discreet one-

hour time period and would constitute 25% of that hour—exceeding the VE's stated off-task threshold" (Dkt. 6-1 at 8-9 (citation modified)), this argument rests on a mischaracterization of the VE's testimony. The VE did not testify about time off-task in increments of 10% per hour; rather, the VE's testimony was expressly directed to an individual being off-task up to 10% of the entire workday, which does not conflict with the breaks set forth in the RFC in any event. (Dkt. 3 at 82 ("Q: If the individual is off task more than ten percent of the workday, how would that affect the availability of work? A: In my experience, they would not be able to sustain employment. Anything greater than ten percent off task time is considered unacceptable.")).

Moreover, the ALJ did adequately explain the limitations imposed, which were consistent with the overall RFC. A 15-minute break from continuous standing or walking does not equate to time off task, as light work only requires an individual to be able to "stand and walk for up to 6 hours a day, [as well as] sit for up to two hours." *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010); *see* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday[;] [s]itting may occur intermittently during the remaining time." (citation modified)). Nor does it equate to a "sit/stand option" that erodes the occupational base for sedentary work. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically[;] [w]here this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.").

And the ALJ indicated that the inclusion of the limitation was tied to Plaintiff's own testimony.  In his decision, the ALJ stated:

> When I asked [Plaintiff] why he cannot work, his most frequent response was the pain in his back/hips.  However, it is frequently noted in the record in physical therapy treatment notes that [Plaintiff] has increased pain with standing greater than 2-3 hours, walking greater than 2-3 hours and increased activity for several hours (e.g., see Exhibit 15F/13 and 15).  [Plaintiff's] assessed residual functional capacity herein accommodates his pain as depicted by his professed exertional capacity and pain as outlined above.

(Dkt. 3 at 30; *see also id.* ("The claimant even noted that his functioning is impacted after standing greater than 2-3 hours, walking greater than 2-3 hours and increased activity for several hours.")).  Thus, far from being unclear, the ALJ expressly explained the basis for his inclusion of the particular limitation and directly credited Plaintiff's own testimony for the inclusion.  *See Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion.  But this does not constitute reversible error."); *Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018) ("The ALJ's decision to credit Plaintiff's claims that he had difficulties with sitting and standing and include additional limitations in the RFC finding was permissible and did not result in any harm to Plaintiff.  Accordingly, it is not a basis for reversal or remand of the Commissioner's final determination.").  The Court concludes that substantial evidence supports this determination.

Accordingly, Plaintiff is not entitled to remand based on the ALJ's inclusion of a 15-minute break from continuous standing or walking in the RFC.

### B. Evaluation of Dr. Santarpia's and Dr. Singla's Opinions

For claims filed on or after March 27, 2017, such as Plaintiff's, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Further, "when a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section." *Id.* § 404.1520c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *See id.* § 404.1520c(c).

The ALJ must articulate his or her consideration of the medical opinion evidence, including how persuasive he or she finds the medical opinions in the case record. *See id.* § 404.1520c(b). More specifically, the ALJ must explain how he or she considered the "supportability" and "consistency" factors and may—but is not required to—explain how he or she considered the remaining factors. *See id.* § 404.1520c(b)(2). With respect to "supportability," the regulations provide that "the more relevant the objective medical evidence and supporting evidence presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

- 10 -

medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1) (citation modified). And with respect to "consistency," the regulations provide that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

On June 28, 2023, Dr. Santarpia examined Plaintiff and opined that he was not impaired in his ability to: (1) understand, remember, and apply simple as well as complex directions and instructions; (2) use reason and judgment to make work-related decisions; (3) sustain an ordinary routine and regular attendance at work; (4) maintain personal hygiene and appropriate attire; and (5) be aware of normal hazards and take appropriate precautions. (*See* Dkt. 3 at 1655). She also opined that Plaintiff was mildly impaired in his ability to: (1) interact adequately with supervisors, coworkers, and the public; (2) sustain concentration and perform a task at a consistent pace; and (3) regulate his emotions, control his behavior, and maintain his wellbeing. (*See id.*). The ALJ found Dr. Santarpia's opinion persuasive because it was supported by her own examination, which did not demonstrate the existence of any severe mental impairments. (*See id.* at 31). He also found the opinion persuasive because it was consistent with the opinion of state agency mental health consultant M. Butler, Ph.D., as well as with Plaintiff's lack of treatment for mental health issues. (*See id.* at 31-32).

On March 15, 2024, Dr. Singla completed a "Primary Source Statement," in which he opined that Plaintiff suffered from depression and exhibited: (1) anhedonia or pervasive

loss of interest in almost all activities; (2) decreased energy; (3) emotional lability; and (4) difficulty thinking or concentrating. (*See* Dkt. 4 at 141, 144). He further opined that Plaintiff would be unable to maintain regular attendance and be punctual within customary, usually strict, tolerances for less than 10% of an 8-hour workday, as well as that Plaintiff would be unable to perform at a consistent pace without an unreasonable number and length of rest periods or deal with normal work stress for more than 10% of an 8-hour workday. (*See id.* at 145-46). The ALJ found Dr. Singla's opinion unpersuasive because it was internally inconsistent and unsupported by the body of Dr. Singla's own treatment notes. (*See* Dkt. 3 at 32-33).

Plaintiff faults the ALJ for failing to acknowledge the consistency between portions of Dr. Santarpia's and Dr. Singla's opinions. (*See* Dkt. 6-1 at 13). The ALJ, however, did not need to individually compare Dr. Singla's and Dr. Santarpia's opinions. *See, e.g.*, *Linda A. v. Comm'r of Soc. Sec.*, No. 6:24-CV-6258 (JLS), 2025 WL 3482747, at *4 (W.D.N.Y. Dec. 4, 2025) ("But an ALJ is not required to compare individual medical opinions with each other; instead, an ALJ needs only to address the consistency of an opinion with the remainder of the record."); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("We are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony. . . ." (citation modified)).

Plaintiff also faults the ALJ for failing to include any mental limitations in the RFC, despite finding Dr. Santarpia's opinion persuasive. (*See* Dkt. 6-1 at 12). But the ALJ was not obligated to accept every portion of Dr. Santarpia's opinion just because he found it persuasive. *See, e.g.*, *Edwin S. o/b/o J.O.S. v. O'Malley*, No. 5:23-cv-1244 (GTS/TWD),

- 12 -

2024 WL 5371513, at *8 (N.D.N.Y. Dec. 13, 2024) (explaining that "the ALJ was not required to accept every portion of the opinions merely because she found them to be persuasive."), *report and recommendation adopted*, No. 5:23-CV-1244 (AJB/TWD), 2025 WL 345813, at *1 (N.D.N.Y. Jan. 30, 2025); *see also Venio v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). What is more, even if the ALJ accepted every portion of Dr. Santarpia's opinion, that decision would not have changed Plaintiff's RFC because Dr. Santarpia did not opine that Plaintiff was more than mildly impaired in any of the four areas of mental work-related functioning. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) ("According to the regulations, if the degree of limitation in each [area of mental work-related functioning] is rated 'mild' or better . . . , then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."); *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) ("An examiner's opinion that a claimant has a 'mild' limitation in an area is consistent with a finding of nonseverity[;] [b]y the same token, 'mild limitations' do not necessarily require the addition of mental limitations in the RFC." (citation modified)).

In the Court's view, the ALJ followed the regulations when evaluating Dr. Santarpia's and Dr. Singla's opinions. *See* 20 C.F.R. § 404.1520c(a). To the extent Plaintiff argues otherwise, such argument amounts to a disagreement with the ALJ's weighing of the evidence, and it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc.*

*Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Plaintiff therefore is not entitled to remand based on the ALJ's evaluation of Dr. Santarpia's and Dr. Singla's opinions.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   January 29, 2026
         Rochester, New York